**Arlis Iron HEART, on behalf of herself and her Old Lodge Children, Plaintiffs,**

**v.**

**James ELLENBECKER, as Secretary of the South Dakota Department of Social Services and Otis R. Bowen, M.D., Secretary of Health and Human Services, Defendants.**

**Civ. No. 86–3057.**

United States District Court, D. South Dakota, C.D.

July 11, 1988.

B.J. Jones, Albert C. Jones, Krista Clark, Michael T. Swallow, Dakota Plains Legal Services, Mission, S.D., for plaintiffs.

Mark L. Bratt, Asst. Atty. Gen., Office of Legal Services, Dept. of Social Services, John Guhin, Asst. Atty. Gen., Dept. of Water & Natural Resources, Brent A. Wilbur, May, Adam, Gerdes & Thompson, Pierre, S.D., for State defendants.

David L. Zuercher, Asst. U.S. Atty., Pierre, S.D., for Federal defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

Dear Counsel:

A motion for summary judgment was filed in this action by the plaintiffs raising the question of first impression of whether South Dakota's policy of categorically denying Indians benefits under the Aid to Families with Dependent Children (AFDC) program because a stepparent resides in the home violates the Social Security Act. Because there is no "State law of general applicability" which requires Indian stepparents to support stepchildren, the State of South Dakota may not apply its stepparent responsibility law to Indians in deciding whether a child is dependent for purposes of determining eligibility for AFDC. As no other issues of fact or law remain in the case, the plaintiff's motion for summary judgment is granted.

## I. STATUTORY FRAMEWORK

The AFDC program is a federal matching program. States wishing to participate in the AFDC program must submit a plan to the federal government meeting the requirements set forth at 42 U.S.C. § 602. Upon approval, participating states are entitled to reimbursement for their expenditures in the program based upon the formula codified at section 403(a)(1) of Title IV–A of the Social Security Act. *See* 42 U.S.C.S. § 603(a) (1985 & Supp.1988).

Among the requirements for the approval of a state plan is the requirement that the state agency administering the program must consider income of a dependent child's stepparent living in the same home in determining need. 42 U.S.C. § 602(a)(31) (1982).[1] The plaintiffs in this action concede that the state defendant may consider income of stepparents living in the home in deciding whether the family's income exceeds the state's standard of need. An initial requirement for AFDC eligibility is a finding that a child is "dependent," defined as a child under a certain age who has "been deprived of parental support or care by reason of the death, continued absence from the home ... or physical or mental incapacity of a parent" and who resides with a relative. *See* 42 U.S.C. § 606(a) (1982). A "parent" within the meaning of this section is a person with a "legal duty of support." *King v. Smith*, 392 U.S. 309, 327, 88 S.Ct. 2128, 2138, 20 L.Ed.2d 1118 (1968). The Secretary of the United States' Department of Health and Human Services

---

1. Section 602(a)(31) provides:

   A State plan for aid and services to needy families with children must—
   (31) provide that, in making the determination for any month under paragraph (7), the State agency shall take into consideration so much of the income of the dependent child's stepparent living in the same home as such child as exceeds the sum of (A) the first $75 of the total of such stepparent's earned income for such month, (B) the State's standard of need under such plan for a family of the same composition as the stepparent and those other individuals living in the same household as the dependent child and claimed by such stepparent as dependents for purposes of determining his Federal personal income tax liability but whose needs are not taken into account in making the determination under paragraph (7), (C) amounts paid by the stepparent to individuals not living in such household and claimed by him as dependents for purposes of determining his Federal personal income tax liability, and (D) payments by such stepparent of alimony or child support with respect to individuals not living in such household;

   42 U.S.C.S. § 602(a)(31) (1985 & Supp.1988).

has promulgated the following regulation on when a stepparent should be considered in determining whether a child is entitled to be considered for AFDC benefits because they have been deprived of parental support:

> A State plan under title IV–A of the Social Security Act shall provide that:
>
> (1) The determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his or her parent who is the principal earner will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is married, under State law, to the child's natural or adoptive parent *and is legally obligated to support the child under State law of general applicability* which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children.

45 C.F.R. § 233.90(a) (1987) (emphasis added).

As stated by the United States Supreme Court in *Lewis v. Martin:* "[S]tate law must be of 'general applicability' to make that obligation in reality a solid assumption on which estimates of funds actually available to children on a regular basis may be calculated." 397 U.S. 552, 559, 90 S.Ct. 1282, 1285, 25 L.Ed.2d 561 (1970). The plaintiffs base their challenge to South Dakota's policy on the treatment of Indian stepparents for purposes of determining AFDC eligibility on this federal regulation.

The State of South Dakota has a stepparent responsibility statute which provides:

> A stepparent shall maintain his spouse's children born prior to their marriage and is responsible as a parent for their support and education suitable to his circumstances, but such responsibility shall not absolve the natural or adoptive parents

of the children from any obligation of support.

SDCL § 25–7–8 (1984).

Based upon this statute, the State of South Dakota through the Secretary of the South Dakota Department of Social Services, James Ellenbecker, considers the presence of a stepparent in the home in determining whether a child has been deprived of parental support or care. SDCL § 25–7–8 provides the State with the "law of general applicability" to establish the legal norm of stepparent responsibility as required under 45 C.F.R. § 233.90(a) for counting a stepparent in deciding whether a child lacks parental support. Thus, the Department's policy in administering the AFDC program requires children to be found ineligible for benefits when a stepparent resides in the home. This policy is codified at section 67:12:01:29 of the Administrative Code of South Dakota. ARSD 67:12:01:29.

## II. FACTS

Plaintiff Arlis Iron Heart is an American Indian enrolled in the Crow Creek Sioux Tribe. Iron Heart lives with her husband and three minor children, Vietta, Arletta and Yvette Old Lodge. Vietta, Arletta and Yvette are enrolled members of the Rosebud Sioux Tribe. The children's father, Calvin Old Lodge, is deceased. Iron Heart is married to Cleveland Iron Heart. Cleveland Iron Heart is an enrolled member of the Rosebud Sioux Tribe and is stepfather to Arlis Iron Heart's children. The family resides on land held in trust by the United States for the Rosebud Sioux Tribe near Winner, South Dakota.[2]

Iron Heart applied for AFDC for her children on July 11, 1986. The State of South Dakota denied Iron Heart's application for assistance on the ground that the children were not deprived of the support of a parent because their stepfather, Cleveland Iron Heart, resides in their home, applying the Department's policy on stepparent responsibility.

**2.** The State defendant argues that there is a genuine issue of material fact as to whether the plaintiffs live in Indian Country within the

meaning of 18 U.S.C. § 1151. The Court finds on the basis of the plaintiffs' exhibits and affidavits that the plaintiffs live in Indian Country.

The parties agree that the State of South Dakota has not assumed civil jurisdiction over the Rosebud Sioux reservation. The Tribal Code of the Rosebud Sioux Tribe contains no stepparent responsibility law, and the Court is unaware of any tribal case law supporting such an obligation. The plaintiffs contend, therefore, that there is no "State law of general applicability" to permit the State of South Dakota to consider a stepparent in their home for purposes of determining AFDC eligibility.

The plaintiffs bring this action under 42 U.S.C. § 1983. They contend that South Dakota's regulation ARSD § 67:12:01:29 as applied to them violates section 406(a) of the Social Security Act of 1935, as amended and codified at 42 U.S.C. § 606(a), and 45 C.F.R. § 233.90(a).[3] The Court assumes jurisdiction over this action under 28 U.S.C. § 1331.

### III. DISCUSSION

The plaintiffs move for summary judgment based on the decision of the Secretary of the United States Department of Health and Human Services that the State may not consider whether a stepparent is in the home for purposes of determining the deprivation of a dependent child when the State's law of general applicability does not apply to members of Indian tribes and when the Indian tribe has no stepparent responsibility law. The plaintiffs cite *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), for the proposition that this Court must defer to the Secretary's construction of the Social Security Act.

The Supreme Court adopted a two-pronged inquiry in *Chevron U.S.A. Inc.* to decide whether the policy of a federal agency is entitled to deference. Courts must first decide whether Congress has decided the issue. *See* 467 U.S. at 842–45, 104 S.Ct. at 2781–83. If Congress has not un-

ambiguously expressed its intent on a challenged policy, "the question for the court is whether the [federal] agency's answer is based on a permissible construction of the statute." 467 U.S. at 843, 104 S.Ct. at 2782. The United States Court of Appeals for the Eighth Circuit has recently cited *Chevron U.S.A. Inc.* with approval in upholding the Secretary of Health and Human Services' interpretation of "child support payments" under the AFDC program. *See Todd v. Norman*, 840 F.2d 608, 612 (8th Cir.1988). The Eighth Circuit states the rationale of deferring to the Secretary's interpretation of the Social Security Act as follows:

> Perhaps appreciating the complexity of the Social Security Act, Congress gave the Secretary broad authority to prescribe standards in applying its provisions. This conferral of authority recognizes that the Secretary is uniquely qualified to interpret provisions of the Social Security Act and also insulates his administrative interpretations from a judicial override, unless that interpretation is 'manifestly contrary to the statute.'

840 F.2d at 612 (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)).

Applying the two-prong test of *Chevron U.S.A. Inc.* to the present facts, the issue for decision is whether the Secretary's view in this case of first impression is permissible under the Social Security Act. There is no federal statute, regulation or policy that addresses the relationship between states and Indian tribes in administering the AFDC program. In addition, there are no guidelines under the AFDC program for a state to use in deciding whether its law of general applicability applies to Indian tribes. Congress simply has not spoken on the question of what to do when conflicts arise between state law and Indian tribal law in administering the AFDC program.

---

**3.** The plaintiffs also complain that the State's action violates 42 U.S.C. § 602(a)(7). Because section 602 was amended to add section 602(a)(31), which provides that income from stepparents must be considered by the state in determining need, this contention is without

merit. As summary judgment is granted in favor of the plaintiffs on the grounds that the State's action violates the Social Security Act, the Court does not reach the plaintiffs' equal protection claim.

Thus, this Court's inquiry focuses on whether the Secretary's interpretation of its regulation and the Social Security Act is permissible.

■ The Secretary's response to the state defendant's interrogatories in this action, through the declaration of Laurence J. Love, Director of Family Assistance in the Family Support Administration, sets forth the Secretary's position on how to interpret 45 C.F.R. § 233.90(a) in states with Indian tribes residing within their borders:

> Federal AFDC policy leaves to the State the determination of whether or not the State will extend its law of general applicability to Indian Tribes residing in the State.
>
> .     .     .     .     .
>
> Consequently, if the States [sic] does not extend its law of general applicability to members of an Indian Tribe, Federal AFDC policy would not require its application to such members when making the determination of whether a child is deprived.

In other words, the federal defendant in this action has interpreted its own regulation to require states to count stepparents in determining a child's deprivation under the AFDC program only when the state's law of general applicability applies to the Indian tribe.

■ The Court finds that this interpretation is a reasonable and permissible construction of the regulation and the Social Security Act. Absent congressional guidance, an agency's interpretation that "represents a reasonable accommodation of conflicting policies" should not be disturbed. *United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560–61, 6 L.Ed.

2d 908 (1961). In this case, the Secretary's declaration is consistent with the provisions of the Social Security Act on the AFDC program which allow states to set their own policies on eligibility as long as those policies do not contravene provisions of the federal Act and its implementing regulations. Specifically, state agencies may not enact stepparent responsibility requirements that are not generally applicable to citizens of the state. As the Secretary's interpretation is permissible, this Court must defer to the Secretary's position. Accordingly, the outcome of this action rests on whether South Dakota's law of general applicability applies to the plaintiffs.

The state defendant argues that South Dakota's stepparent responsibility law is applicable to Indians residing in Indian Country *who apply for benefits from the AFDC program.* The state defendant does not seem to argue that the State's stepparent responsibility law is applicable to members of Indian tribes generally. Herein lies the flaw in the state defendant's argument that its policy as applied to members of Indian tribes does not contravene 45 C.F.R. § 233.90(a).

The state defendant seeks to avoid the result mandated by the Secretary's declaration of policy on the consideration of Indian stepparents by relying on the proposition that "an Indian accepting benefits under state law is subject to state law restrictions and state eligibility requirements." As authority for this proposition, the Department cites only general statements in *Felix S. Cohen's Handbook of Federal Indian Law* and state cases noted therein.[4] However, this language is derived from cases that do not involve an Indian's application for AFDC benefits. As previously stated, the

---

**4.** The State defendant relies on the following passage from Cohen's treatise:

> One example of limited state court jurisdiction over Indians in Indian country is where Indians exercise rights as state citizens or residents. State legislation defines the terms upon which such rights are available. State court jurisdiction is available in these circumstances to determine eligibility for rights or benefits, and jurisdiction is also available over Indians exercising state authority as officers of the state or its subdivisions.

Strickland, *Felix S. Cohen's Handbook of Federal Indian Law* at 350 (1982 ed.) (footnotes omitted). The state defendants also cite *Shirley v. Superior Court*, 109 Ariz. 510, 513 P.2d 939 (1973), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1415, 39 L.Ed.2d 472 (1974), and *Indian Oasis School Dist. No. 90 v. Zambrano*, 22 Ariz.App. 201, 526 P.2d 408 (1974). These cases hold that a state may exercise jurisdiction over an Indian applying for a position as a county supervisor and an Indian acting as a school board member, respectively.

AFDC program is a federal matching program. The states are authorized to set the standard of need for AFDC eligibility; however, the state's plan must comply with federal regulations. Thus, the AFDC program is not, strictly speaking, a benefit conferred by state law. For this reason, the sparse case law supporting the proposition that application for a state benefit subjects Indians to the state's jurisdiction is inapplicable to the present case. Moreover, in deciding that federal AFDC policy allows a state to consider Indian stepparents in determining a child's dependent status for AFDC only if the state extends its law of general applicability to members of Indian tribes generally, the Secretary implicitly recognizes that the state's initial inquiry should be whether a particular Indian tribe has retained sovereignty to decide for itself whether stepparents should be legally obligated to support their stepchildren.

■ The Court holds that the Rosebud Sioux Tribe has retained its sovereign status to decide whether its members who are stepparents have a legal obligation to support their stepchildren. To reach this result, the Court has the difficult task of deciding whether a statute which speaks directly of a domestic matter, over which tribes traditionally exercise sovereignty, is nevertheless applicable to members of an Indian tribe because tribal sovereignty is preempted.

The Supreme Court has often stated that consideration of the sovereign immunity of an Indian tribe forms the appropriate "backdrop" against which federal statutes must be construed in considering whether tribal sovereignty has been preempted. *See Rice v. Rehner*, 463 U.S. 713, 719, 103 S.Ct. 3291, 3295–96, 77 L.Ed.2d 961 (1983) (quoting *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 172, 93 S.Ct. 1257, 1262, 36 L.Ed.2d 127 (1973)). This Court begins its analysis, therefore, by tracing the origins of the Tribe's status as

a sovereign. The Rosebud Sioux Tribe was created by the Great Sioux Agreement of 1889 which divided the Great Sioux Reservation into numerous reservations. *See* Great Sioux Agreement of 1889, ch. 405, 25 Stat. 888 (1889). Provisions of the Fort Laramie Treaty of 1868 allowing Sioux Indians "absolute and undisturbed use and occupation" of certain territory remained in effect by the 1889 Agreement. The State of South Dakota has not assumed civil jurisdiction over Indian Country located within the State, with the possible exception of jurisdiction over "civil causes of action arising on any highways." [5] SDCL § 1-1-21 (1985 rev.).

The United States Supreme Court has recognized that "Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status." *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978) (holding that Navajo tribe has sovereignty to prosecute tribal offenses committed by tribal members). The Court is unaware of any treaty provisions or statutes *creating* the authority of the Rosebud Sioux Tribe to enact a stepparent responsibility law or to regulate on parental support. This authority is codified in the Tribal Code of the Rosebud Sioux Tribe in section 3–1–4, which states that the Juvenile Court shall have jurisdiction over Indian children residing on the Reservation and over "all persons having care, custody, or control of such children." Tribal Code of the Rosebud Sioux Tribe, tit. 3, § 3–1–4. This jurisdiction covers divorce and child support matters, adoption, and proceedings to protect children from adult abuse, *id.*, and is an expression of the Tribe's original sovereignty over its domestic relations.

There is no federal statute that expressly abrogates the Tribe's authority to decide for itself whether stepparents should support their stepchildren.[6] In deciding

---

**5.** The issue of whether the State has assumed jurisdiction over criminal and civil causes of action arising on the State's highways is presently being litigated in another action before this

Court. *Rosebud Sioux Tribe v. State of South Dakota* Civ. 86–3019.

**6.** The Court notes that the Indian Child Welfare Act of 1978 provides that Indian tribes have

whether the Rosebud Tribe's sovereignty over domestic matters is preempted, the Court therefore must decide whether the State's action of applying its stepparent responsibility law to the plaintiffs would infringe "the right of reservation Indians to make their own laws and be ruled by them." *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959). The Court holds that application of South Dakota's stepparent responsibility law would interfere with the Tribe's powers of self-government. The opinion of the Supreme Court in *Fisher v. District Court* is relevant to the inquiry in this case. 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976). In *Fisher,* the Court held that the Cheyenne Tribe had exclusive jurisdiction over adoption proceedings. 424 U.S. at 389, 96 S.Ct. at 947–48. In reaching that result, the Court found that there was no federal statute to sanction the State of Montana's assumption of jurisdiction and that the State's action interfered with the Tribe's self-government. 424 U.S. at 388, 96 S.Ct. at 947. In the present case, the Department's application of section 67:12:01:29 of the Administrative Code of South Dakota to members of Indian tribes indiscriminately interferes with the Tribe's right of self-government which includes the right to determine for itself whether to impose a stepparent responsibility law.

Since *Fisher,* the Supreme Court has broadened its inquiry on the question of preemption of tribal sovereignty to include consideration of the "balance of state, federal, and tribal interests." *Rice v. Rehner,* 463 U.S. 713, 720, 103 S.Ct. 3291, 3296, 77 L.Ed.2d 961 (1983). In *Rice v. Rehner,* the Court decided that Congress authorized states to regulate the sale of liquor on Indian reservations. 463 U.S. at 726, 103 S.Ct. at 3299–3300. As such, the Court upheld a state's law requiring Indian traders to obtain state liquor licenses. 463 U.S. at 730–31, 103 S.Ct. at 3301–02. However, the *Rice* result was based on a finding that

the tribe had no tradition of sovereignty over the regulation of liquor, 463 U.S. at 722, 103 S.Ct. at 3297, and on a finding that Congress delegated the authority to regulate liquor transactions to the states. 463 U.S. at 728–29, 103 S.Ct. at 3300–01. In this action, the Tribe has a long history of sovereignty over its domestic relations. In addition, there is no language in the Social Security Act which addresses the relationship between the states and the Indian tribes in administering the AFDC program. Thus, balance of the interests of the parties requires a finding that the Tribe has retained its inherent authority to decide for itself whether stepparents should be legally obligated to support their stepchildren.

The State defendant is correct in asserting that "any regulatory interest of the State must be given weight." *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 144, 100 S.Ct. 2578, 2584, 65 L.Ed.2d 665 (1980) (citing *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 171, 93 S.Ct. 1257, 1261–62, 36 L.Ed.2d 129 (1973)). This Court is mindful of the State's monetary interest in the AFDC program and the fact that the Indian tribes do not contribute to the funding for the program. In choosing to participate in the AFDC program, however, the State elected to provide benefits to all eligible dependent children. The State cannot shirk this duty by utilizing a stepparent responsibility regulation that is not generally applicable to members of Indian tribes. This result does not cast doubt as the state defendant contends on the ability of the State to "administer *any* Social Security program in 'Indian Country,'" but is required on the facts of this case.

The state defendant cites federal regulations requiring states to administer the AFDC program equitably and on a statewide basis in arguing that the plaintiff's position on exclₐ ling Indian stepparents in determining a child's dependency would result in reverse discrimination. Specifically,

exclusive jurisdiction in child custody proceedings when this jurisdiction has not previously vested in the state. Indian Child Welfare Act of 1978, Pub.L. No. 95–608, 92 Stat. 3071 (codified at 25 U.S.C. § 1911(a)). As jurisdiction over

child custody proceedings includes the jurisdiction to *terminate* parental rights, a finding by this Court that the Rosebud Tribe has no authority to *create* parental responsibility would seem illogical.

the state defendant points to 45 C.F.R. § 233.10(a)(1)(iv) which provides: "Eligibility conditions must be applied on a consistent and equitable basis throughout the State." 45 C.F.R. § 233.10(a)(1)(iv) (1987). The state defendants' argument seems to be that the Secretary's policy confers on Indians applying for AFDC benefits who are not subject to a state's law of general applicability and whose tribal code contains no stepparent responsibility law a special benefit that is unavailable to whites. The Department argues in addition that if Congress had wanted to make a special rule on Indian stepparents it could have done so.

While the Court notes that the invalidation of the Department's policy on stepparent responsibility as applied to members of Indian tribes may create some procedural difficulties in administering the AFDC program for the state agency, the Court's holding does not carve out a special rule for the benefit of Indians. The State's authority to determine eligibility for AFDC benefits is not unlimited. State plans must comply with federal guidelines. Because the Court has held that the Secretary's policy on regulation 45 C.F.R. § 233.90(a) as applied to Indian stepparents is permissible, this Court cannot hold that the Department may apply its policy on stepparent responsibility to members of a particular Indian tribe when the State's stepparent responsibility law does not apply to them. This result is necessary to insure that the application of a stepparent responsibility law in determining a child's dependent status is based on a "solid assumption" for Indians and whites equally that parental support through the stepparent is actually available to the child. *Lewis v. Martin*, 397 U.S. at 559, 90 S.Ct. at 1285–86. Use of the term "general applicability" by the Secretary in 45 C.F.R. § 233.90(a), as it has been interpreted by the Supreme Court and by the Secretary, promotes the interest of applying eligibility conditions consistently and equitably.

■ Based on the findings of fact and conclusions of law set forth above, the Court holds that the state defendant may not consider the presence of Indian step-

parents in the home in determining a child's dependent status for AFDC eligibility unless the state's law of general applicability is applicable to the particular Indian tribe or that tribe has decided that stepparents are legally obligated to support their stepchildren. As South Dakota's law of general applicability does not apply to members of the Rosebud Sioux Tribe and the Tribe has no stepparent responsibility law, the Court holds that section 67:12:01:29 of the Administrative Code of South Dakota may not be applied to prevent the plaintiffs in this action from being eligible for AFDC benefits. As there is "no genuine issue as to any material fact" and the Court holds that the plaintiffs are "entitled to a judgment as a matter of law," F.R.C.P. 56(c), the plaintiffs' motion for summary judgment is granted.